The CiiAsrcETiTjOit.
The object of the complainant’s hill is to secure him in the enjoyment of an artificial watercourse, which, commencing on an adjacent farm of two of the defendants, was, as originally constructed, carried upon the farm of the complainant, and there terminated. For a history of the case, I refer to the proceedings and to the opinion delivered on the motion to dissolve the injunction which had been allowed upon filing the hill. 1 Stockton 10. Upon the answer’s coming in, the injunction was dissolved.
Upon reviewing that opinion, I now think I was in error as to one of the grounds upon which I reached my conclusion to dissolve the injunction.
The title to the two farms, the one now owned by the complainant and the other by two of the defendants, was originally united in Christian Sharp. 'Upon an application to the Orphans Court, by one of the heirs, to divide the real estate of Christian Sharp, the part of the farm on the northwest side of the road was set off to the widow and Henry Sharp, two of the defendants. Subsequently, hut in the course of the same proceedings, the farm now owned by the complainant was sold, and through this sale he derived his title. I erred in supposing that the fact of the widow and Henry Sharp deriving the first title made *208 any difference. I yet think the principle I laid down was correct, the error was in its application to the present case. If Christian Sharp had himself severed his unity of title, and had conveyed to the defendants, he could not claim this easement upon their land. It would be derogating from his own grant. It is a serious encumbrance upon the defendants’ title, and I cannot conceive upon what principle of law or equity Christian Sharp could, after warranting to the defendants a title free and clear of all encumbrances, claim the benefit of this encumbrance, on the ground of its being incident to other lands which he owued, or was absolutely necessary to their beneficial enjoyment. It was his duty tó reserve any privilege he might desire to enjoy. It was in his power to do so. By what more expressive terms could he abandon any such privilege than those used in an ordinary deed of bargain and sale? There is a difference between a natural watercourse and an artificial construction for the conveyance of water. A. is the owner of two farms through which runs a natural stream. He sells to B. the farm upon which the watercourse has its origin. A. is entitled to have the water flow upon the farm which he reserves the same as he enjoyed it when he severed his title, because the watercourse did not begin by the consent or the act of the parties, but ex jure natures. But water conveyed by pipes is a thing which is created and controlled by the parties, and is in its very nature different from a natural watercourse. This view of the case is sanctioned by the authorities referred to by Mr. Justice Story in Hazard v. Robinson, 5 Mason’s Rep. 272.
Whitlock, J., in Sherry v. Piggot, Buls. 889, says there is a difference between a way, a common, and a watercourse. Bracton, lib. 4, 221, 222, calls them servitutes preediales, these which begin by private right, by prescription, by assent, as a way common, being a particular benefit, to take part of the profits of the land; this extinct by unity, because the greater benefit shall drown the less: a water *209 course doth not begin by prescription, nor yet by assent, but the same doth begin ex jure naturae, having taken this course naturally, and cannot be averted.
But the widow and Henry Sharp are not entitled to the position of purchasers from Christian Sharp. Here was my error. The complainant derived his title under the same proceedings of the court as the defendants did their title. They are entitled to no preference from the mere fact of priority in the date of any paper or proceedings which cast the title upon them. The proceedings of the court must be looked upon as a simultaneous act, through which all parties derive their title, a common source from which both titles are derived, and must date. In respect to priority of title, both parties stand in a like position as if Christian Sharp had, by one and the same act, made a division of the property between them.
The other ground upon which the injunction was dissolved was, that, by the pleadings, it appeared that the aqueduct was not necessary for the beneficial enjoyment of the property. The fina] decision of the cause must now turn on this same point, and depends upon the evidence which has been taken. I reviewed the leading authorities (1 Stockton’s 2i. 10) which I considered as establishing this to be the principle which must govern the case, and I will now' merely refer to them. Note to 1 Saund. Rep. 325; Morris v. Edgington, 3 Taunt. R. 31; Blaine’s lessee v. Chambers, 1 Serg. R. 169; Pickering v. Staples, 5 Serg. New Ipswich Woollen Factory v. Batcheldor, 3 N. H. R. 190; Johnson v. Jordan, 2 Metc. 234; 10 S. & R. Stuckler v. Tood, Shep. Touchstone 89; Comyn’s Big., vol. 4, title Grant E. 11; Nicholas v. Chamberlain, 2 Cro. R. 121; Leonard v. White, 7 Mass. 8, 3 Kent 420; Hazard v. Robeson, 3 Mason’s R. 48 ; U. States v. Appleton, 1 Sum. 492; Story v. Odin, 12 Mass. 157; Swansborough v. Coventry, 9 Bing. 305; Compton v. Richards, 1 Price 27; Robin v. Barnes, Hob. 131; 1 B. & P. 374 (note); Grant v. Chase *210 and another, 17 Mass. 443; Hewlins v. Shippam, 5 Barn. & Cress, 210; Sherry v. Piggott, Bulstrode’s Pep. 339.
Is the aqueduct, then, essential to the beneficial enjoyment of the premises ? If it is, it passes hy the grant the same as a way hy necessity. It was constructed there as long ago as the year 1810, and has ever since been used for the purposes of the dwelling house and other buildings erected there. It is the only mode upon the premises by which water fit for the ordinary family use has been, and still is supplied. There is no well upon the premises. This aqueduct diverts a part of the water from the natural watercourse which flows through both farms. The water which passes down the natural stream is corrupted hy the wash from the public highway and the barnyard on the defendants’ premises, so as to render the water, at times, unfit for use. The evidence is abundantly sufficient to show that the complainant’s farm cannot he beneficially enjoyed without the use of the aqueduct.
The complainant is entitled to a perpetual injunction protecting him in the enjoyment of the water through the artificial channel when it is not drawn off at the upright hy the defendants, Maria and Henry Sharp, for use upon their premises.
The injunction must he revived, and he made perpetual as to the defendants, Maria Sharp, Henry Sharp, Abram O. Stites, William Creveling, William E. Mete, Obudy Carpenter, William Price, and Butler Thomas, hut without costs. As to the other defendants, the hill must he dismissed, with their costs to be paid them fly the complainants. They disclaim any interest in the subject matter of the controversy, and it is not shown that they have any.