592 A.2d 623

EMILY BLIGEN, PLAINTIFF–APPELLANT, v. JERSEY CITY HOUSING AUTHORITY, DEFENDANT–RESPONDENT, AND ROBERT BLOUNT, MR. MINISTRAL, JOHN DOE, RICHARD ROE, ABC CORP., XYZ CORP., ETC., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued March 5, 1991—Decided July 10, 1991.

Before Judges PRESSLER, BAIME and A.M. STEIN.

*Donna Lee Mantel* argued the cause for appellant (*Miltz and Mantel*, P.A., attorneys; *Donna Lee Mantel* on the brief).

*Jeffrey L. Shanaberger* argued the cause for respondent (*Hill, Wallack & Masanoff,* attorneys; *Jeffrey L. Shanaberger* on the brief).

The opinion of the Court was delivered by

ARNOLD M. STEIN, J.A.D.

We reverse the order granting summary judgment to defendant Jersey City Housing Authority.

Plaintiff was a tenant in the A. Harry Moore housing complex. She slipped and fell on a driveway adjacent to a parking area located at the rear of the building where she was a tenant. She claims that she fell on the accumulated snow and ice which had not been removed for at least two days following a snowstorm. According to plaintiff, she was to be met by a friend in an automobile. She walked out of her building, went to her right along the sidewalk and then turned right on the sidewalk towards the rear of the building and in the direction of the parking area which was along the rear of the housing complex. She claimed that the sidewalk had not been cleared. The only path was made by snow compacted by earlier pedestrians. She fell when she stepped off the curb leading to the parking area. At deposition, plaintiff placed the location of the accident on the driveway, just behind a car located in a designated parking space.

The A. Harry Moore complex is located on Duncan Avenue in Jersey City. The property has street frontage of 670 feet. There is an entrance located on the easterly end, giving access to a driveway varying in width between eighteen and twenty-one feet, traversing the outer edge of the property. The driveway is semi-circular and leads back out to Duncan Avenue at the property's easterly end. Parking spaces are located perpendicular to the driveway's entire length. There are walkways leading from the parking spaces to the six apartment buildings and the recreation area located in the complex.

■ The motion judge correctly rejected the Authority's contention that plaintiff was barred by the "weather immunity" provisions of *N.J.S.A.* 59:4–7:

Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions.

Plaintiff's accident did not occur on a street. She fell on an interior driveway, providing limited access to residents and employees of the complex and to business and social visitors to the facility. The driveway also provides access to its adjacent parking spaces. We note that the site plan for the property makes several references to this access lane as a "driveway."

The New Jersey Tort Claims Act does not define the words "streets" and "highways." Common sense mandates a conclusion that an eighteen to twenty-one foot wide internal driveway running along the outer edge of a multi-building housing complex and adjacent to the complex's parking spaces is neither a street nor a highway. Nor is it a "street" as defined by the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 *et seq.*

"Street" means any street, avenue, boulevard, road, parkway, viaduct, drive or other way (1) which is an existing State, county of municipal roadway, or (2) which is shown upon a plat heretofore approved pursuant to law, or (3) which is approved by official action as provided by this act, or (4) which is shown on a plat duly filed and recorded in the office of the county recording officer prior to the appointment of a planning board and the grant to such board of the power to review plats; and includes the land between the street lines, whether improved or unimproved, and may comprise pavement, shoulders, gutters, curbs, sidewalks, parking areas and other areas within the street lines. [*N.J.S.A.* 40:55D–7].

■ We disagree with the motion judge's conclusion that common-law immunity absolutely barred recovery against the public entity for liability arising from its failure to clear its driveways, parking lots and walkways. It is true that common law immunities not contained in the Tort Claims Act are preserved by the Act. *N.J.S.A.* 59:2–1 ("any immunity provisions provided in the act or by common law will prevail over the liability provisions." *Attorney General's Task Force on Sovereign Immunity*, (1972)); *Pico v. State*, 116 *N.J.* 55, 59, 560 *A.*2d 1193 (1989); *Rochinsky v. State of New Jersey, Dept. of*

*Transp.*, 110 *N.J.* 399, 408, 414–15, 541 *A.*2d 1029 (1988) (Tort Claims Act did not abrogate common-law immunity for routine snow removal activities involving streets and highways); Margolis and Novack, Claims Against Public Entities 16 (1990). Prior to the enactment of the Tort Claims Act public entities were immune from liability for injuries resulting from snow removal activity or inactivity in areas used by the general public. *Miehl v. Darpino*, 53 *N.J.* 49, 53–54, 247 *A.*2d 878 (1968) (streets and sidewalks); *Amelchenko v. Freehold Borough*, 42 *N.J.* 541, 550, 201 *A.*2d 726 (1964) (public parking lots; case actually involves municipality's right to arrange priority in which snow removal activities will be conducted).

We conclude that common-law immunity for snow removal activities did not extend to public housing projects. Rather, the common law duty owed by such public landlords was the same as that applicable to private property owners: the obligation to exercise reasonable care in making the premises safe for its occupants. *Mayer v. Housing Auth. of Jersey City*, 84 *N.J.Super.* 411, 417–18, 202 *A.*2d 439 (App.Div.1964); *Doud v. Housing Authority of Newark*, 75 *N.J.Super.* 340, 344–45, 183 *A.*2d 149 (App.Div.1962), *aff'd*, 44 *N.J.* 567, 210 *A.*2d 617 (1965). The housing authority's duty to its tenants is now measured by the more stringent provisions of *N.J.S.A.* 59:4–2. *Speaks v. Jersey City Housing Authority*, 193 *N.J.Super.* 405, 409–11, 474 *A.*2d 1081 (App.Div.1984), *certif. denied*, 97 *N.J.* 655, 483 *A.*2d 177 (1985). For plaintiff to recover under that section she must prove (1) that a dangerous condition existed on the property at the time of injury; (2) that the dangerous condition proximately caused the injury; (3) that the dangerous condition created a foreseeable risk of the kind of injury incurred; (4) that either (a) a public employee created the dangerous condition or (b) that a public entity had actual and constructive notice of the dangerous condition in sufficient time prior to the injury to have protected against the condition; and (5) that the action or inaction of the public entity in respect to its effort to protect against the condition was palpably unreasonable. *N.J.S.A.*

59:4–1 defines "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

It is for the jury to determine whether plaintiff can satisfy these statutory requirements.

Reversed and remanded to the Law Division for further proceedings consistent with this opinion.